RECORD NO. 13-7096

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals
## For The District of Columbia Circuit

# SHEILA ALFORD,

*Plaintiff – Appellant*,

**v.**

# PROVIDENCE HOSPITAL,

*Defendant – Appellee*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————

## SUPPLEMENTAL JOINT APPENDIX

———————

Donald M. Temple
TEMPLE LAW GROUP
1101 15th Street, NW, Suite 910
Washington, DC 20005
(202) 628-1101

*Counsel for Appellant*

Eric W. Gunderson
FARRELL & GUNDERSON
8840 Stanford Boulevard, Suite 3100
Columbia, Maryland  21045
(301) 596-7222

*Counsel for Appellee*

# <u>TABLE OF CONTENTS</u>

<u>Appendix Page</u>

**Exhibits to**
**Defendant's Motion for Summary Judgment**
  **filed November 2, 2012:**

  **E.** **Email to Ashley Powell from Bonnie Lancaster**
    **Re:  Sheila Alford**
      **dated April 29, 2010** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

  **H.** **Medical Records of Robert Wilson, M.D.**
      **various dates** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**Exhibits to**
**Defendant's Opposition to Plaintiff's Motion for Summary Judgment**
  **filed November 30, 2012:**

  **N.** **Excerpts of Transcript of Deposition of Ashley S. Powell**
      **taken July 17, 2012** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

  **O.** **Defendant's Answers to Interrogatory 8**
      **dated March 30, 2012** . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

  **P.** **Letter to Sheila Alford from Robert Rumsey**
      **dated December 17, 2010** . . . . . . . . . . . . . . . . . . . . . . . . . **14**

  **Q.** **Excerpts of Transcript of Deposition of LaToya Abbott**
      **taken July 17, 2012** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

  **S.** **Excerpts of Transcript of Deposition of Terrie Trimmer**
      **taken October 26, 2012** . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

**Exhibit to**
**Defendant's Reply to Plaintiff's Opposition to**
**Motion for Summary Judgment**
  **filed December 19, 2012:**

  **T.** **Excerpts of Transcript of Deposition of Yomi Fabiyi**
      **taken July 31, 2012** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**

**Powell, Ashley**

| | |
|---|---|
| **From:** | Lancaster, Bonnie |
| **Sent:** | Thursday, April 29, 2010 3:11 PM |
| **To:** | Powell, Ashley |
| **Subject:** | RE: Sheila Alford |

I would like to grant her the additional 60 days of leave.  Thanks

**From:** Powell, Ashley
**Sent:** Thursday, April 29, 2010 1:38 PM
**To:** Lancaster, Bonnie
**Subject:** Sheila Alford
**Importance:** High

Hi Bonnie,

Ms. Alford has exhausted her FMLA job protection. At this point we can move forward with terminating her, if there is an operational need to fill her position or you have the right to grant her an additional 60 days leave of absence. Please let me know how you would like to proceed.

Thanks,

*Ashley S. Powell*
Work Life Program Specialist
Human Resources
Providence Hospital
1150 Varnum St., NE Washington, DC 20017
(202) 269-7904 Phone ~ (202) 269-7662 Fax
Email: apowell@provhosp.org

Exhibit E

Medical Records of

Robert Wilson, M.D.

Exhibit H

**Progress Notes**

**Patient:** Alford, Sheila A.
**DOB:** ██████ 1957   **Age:** 53 Y   **Sex:** Female
**Phone:** ██████
**Address:** 6805 Brown Wood Dr., Upper Marlboro, MD-20772

**Provider:** Robert H Wilson, MD
**Date:** 12/07/2010

## Subjective:

**CC:**

**HPI:**
Neck:
Pain Management was not authorized by WC.
53 year old female presents with c/o Pain  mild rest, nocturnal.  c/o Radiation of Pain from neck down arm.

**ROS:**
CARDIOLOGY:
Leg Edema Yes.
CONSTITUTIONAL:
Weakness Yes.
NEUROLOGY:
Tingling Numbness Yes.

**Family History:**
**Social History:**
**Medications:** None
**Allergies:** Macrodantin.

## Objective:

**Examination:**
General Examination:
General Appearance: Alert, oriented, NAD, obese, wheelchair bound.

Neck:
Inspection no obvious postural deformity.  Paraspinal muscle spasm: present on left side.  Range of motion of neck: normal in all directions.  Trapezius tenderness: present on left side.
Sensations: tender, positive Tinel's at the supraclavicular region.
shoulder ROM limited due to discomfort

## Therapeutic Interventions:

## Assessment:

**Assessment:**
1. Acute cervical sprain - 847.0 (Primary)

## Plan:



**1. Acute cervical sprain**
Pt requests time off from work, until Tues. Also, when RTW, no lifting >10lbs. Pt may address Pain Management at another time.
**Immunizations:**
**Labs:**
**Preventive:**
**Follow Up:** prn

**Provider:** Robert H Wilson, MD
**Patient:** Alford, Sheila A.  **DOB:** ████1957  **Date:** 12/07/2010

**Electronically signed by Robert Wilson on 12/07/2010 at 11:06 AM EST**
**Sign off status: Pending**



PROV 051

**SJA 4**

## RANKIN ORTHOPAEDIC & SPORTS MEDICINE CENTER

E. Anthony Rankin, MD
Adult Reconstructive Surgery
Hand Surgery

1160 Varnum St. NE, Suite 312  |  DePaul Professional Building  |  Washington, DC 20017  |  (202) 526-7031  |  (202) 529-8711 Fax

Marc E. Rankin, MD
Sports Medicine
Adult Reconstructive Surgery

Craig M. Thomas, MD
Adult Reconstructive Surgery
Sports Medicine

Robert H. Wilson, MD
Hand & Upper Extremity
Surgery

## DISABILITY CERTIFICATE

Date: _12-07-10_

This is to certify that _Sheila Alford_

Has been under my professional care and was totally/partially incapacitated

From _10-28-09_ to _12-14-10_

As of _12-14-10_ he/she is

RECEIVED

DEC 07 2010

OCCUPATIONAL HEALTH

_____ Still unable to return to work/school

_____ Sufficiently recovered to resume a normal workload

✓ Sufficiently recovered to return to work/school with the following limitations:

_No heavy lifting over 10 lbs_

FAXED

DEC 07 2010

Edward A. Rankin, M.D.        Marc E. Rankin, M.D.        Craig M. Thomas, M.D.        Robert H. Wilson, M.D.

## Progress Notes

**Patient:** Alford, Sheila A.
**DOB:** ████1957  **Age:** 53 Y  **Sex:** Female
**Phone:** ██████████
**Address:** 6805 Brown Wood Dr., Upper Marlboro, MD-20772

**Provider:** Robert H Wilson, MD
**Date:** 12/15/2010

## Subjective:

**CC:**
1. LT Shoulder.

**HPI:**
Exam:
Pt has difficulties getting to work. "They want me to come to see you", ?Pt has her weights, and may lift 20 lbs.

**Family History:**

**Social History:**

**Medications:** None

**Allergies:** Macrodantin.

## Objective:

**Examination:**
General Examination:
General Appearance: Alert, oriented, NAD, obese, wheelchair bound.
no specific changes
Neck:
Inspection no obvious postural deformity. Paraspinal muscle spasm: present on left side. Range of motion of neck: normal in all directions. Trapezius tenderness: present on left side.
Sensations: tender, positive Tinel's at the supraclavicular region.
shoulder ROM limited due to discomfort

## Therapeutic Interventions:

## Assessment:

**Assessment:**
1. Acute cervical sprain - 847.0 (Primary)

**FAXED**

## Plan:

**1. Acute cervical sprain**
Unclear reason that WC sent pt today. Pt may lift up to 20lbs w/ weights used in pt's hand w/ current work restrictions.    JAN 1 9 2011

**Immunizations:**

**Labs:**

**Preventive:**

**Follow Up:** prn

**RECEIVED**

JAN 1 9 2011

OCCUPATIONAL HEALTH



**Provider:** Robert H Wilson, MD
**Patient:** Alford, Sheila A.  **DOB:** ████1957  **Date:** 12/15/2010

**Electronically signed by Robert Wilson on 01/19/2011 at 11:25 AM EST**
**Sign off status:** Pending

```
            IN THE UNITED STATES DISTRICT COURT

                FOR  THE DISTRICT OF COLUMBIA

                    Civil Division

- - - - - - - - - - - - x

SHEILA ALFORD,

         Plaintiff,

     v.                        Civil No. 11-2121 (RMC)

PROVIDENCE HOSPITAL,

         Defendant.

- - - - - - - - - - - - x

                        Tuesday, July 17, 2012

                        Washington, D.C.

Deposition of

            ASHLEY SAMONE POWELL,

the 30(b)(6) witness, called for examination by

counsel for the plaintiff, pursuant to notice, held

at Providence Hospital, 1150 Varnum Street, N.W.,

Washington, D.C. 20017, beginning at 10:10 a.m.,

before Kelly Susnowitz, a Notary Public in and for

the District of Columbia, when were present on

behalf of the respective parties:
```

Exhibit N

30(b)(6) DEPOSITION OF ASHLEY SAMONE POWELL
CONDUCTED ON 7/17/2012                              60

1

2

3          MR. TEMPLE:  I have no further questions.

4          MR. GUNDERSON:  I have some questions.

5     EXAMINATION BY COUNSEL ON BEHALF OF THE DEFENDANT

6  BY MR. GUNDERSON:

7     Q.  You've testified on various cases during

8  your testimony this morning about the FMLA leave

9  being exhausted and then her manager,

10  Ms. Lancaster, giving her a 60-day extension of

11  leave.  Just to clarify, the 60-day leave that was

12  granted to her after her FMLA leave had exhausted,

13  that's not an extension of FMLA leave, correct?

14     A.  No.

15     Q.  That's a separate administrative leave?

16     A.  Through the department.

17     Q.  So Ms. Lancaster's agreement to give

18  Ms. Alford an additional 60 days of leave didn't

19  extend her FMLA leave?

20     A.  Doesn't extend FMLA, it just grants her

21  additional time, solely at the discretion of the

30(b)(6) DEPOSITION OF ASHLEY SAMONE POWELL
CONDUCTED ON 7/17/2012                    61

1    manager and Providence Hospital.

2        Q.   And in fact, if I refer to the termination

3    letter, which I think was Exhibit 2, Mr. Fabiyi

4    stated that, in the second sentence of the first

5    paragraph, that her FMLA expired April 14th and

6    then the director granted her an additional days

7    of personal leave, which expired on July 9th.  So

8    just to clarify, that personal leave that he's

9    referring to, that's separate from FMLA leave?

10       A.   Yes.

11

12

13

14

15

16

17

18

19

20

21

* * *

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHEILA ALFORD,                          *

    Plaintiff,                         *

v.                                      *      Civil Action No. 11-2121 (RMC)

PROVIDENCE HOSPITAL,                    *

    Defendant.                        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANTS PROVIDENCE HOSPITAL'S ANSWERS
### TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Providence Hospital, Defendant, by and through its attorneys Hugh W. Farrell and Eric

W. Gunderson, Farrell & Gunderson, and in response to Plaintiff's First Set of Interrogatories to

Defendant, states as follows:

### INTRODUCTION

A.     The information supplied in these answers is not based solely on the knowledge

of the party to whom these interrogatories are addressed, but includes the knowledge of that

party's agents, representatives and attorneys, unless privileged.

B.     The word usage and sentence structure may be that of the attorney assisting in the

preparation of these answers and thus does not necessarily purport to be the precise language of

the executing party.

C.     The Interrogatories have been interpreted and answered in accordance with the

Federal Rules of Civil Procedure, plain English usage, and to the extent not specifically

challenged by objection, the definitions and instructions included with Interrogatories.

Exhibit O

**INTERROGATORY NO. 8:** Please provide an itemization and/or accounting of the dates Plaintiff was charged for leave during 2010 and 2011 identifying the source of said leave (FMLA, sick leave, annual leave, other). Identify and produce any and all documents relied upon during your review and used to respond to this Interrogatory No. 8.

  **ANSWER:**

| Dates of Leave | Type of Leave |
|---|---|
| 01/01/2010 – 03/30/2010 | FMLA |
| 04/02/2010 – 04/13/2010 | FMLA |
| 04/14/2010 – 05/07/2010 | Personal Leave[1] |

---

[1]  "Personal Leave" refers to that leave granted to associates pursuant to Policy 16.23 Sec. VIII(C).

| | |
|---|---|
| 06/16/2010 – 06/18/2010 | PTO |
| 07/16/2010 | PTO |
| 07/19/2010 | PTO |
| 07/31/2010 | PTO |
| 08/19/2010 – 08/20/2010 | PTO |
| 08/31/2010 – 09/03/2010 | Unplanned PTO |
| 09/24/2010 | PTO |
| 10/19/2010 | Unplanned PTO |
| 11/01/2010 | PTO |
| 11/23/2010 | PTO |
| 12/02/2010 | PTO |
| 12/03/2010 | Personal Leave |
| 12/06/2010 – 01/07/2011 | Personal Leave |

Documents relied upon in answering this Interrogatory include those documents previously produced and identified as **PROV 012-013** and those documents produced in connection with Defendant's Response to Request for Production of Documents which are identified as **PROV 071-078**.

I HEREBY AFFIRM under the penalties of perjury that the foregoing answers are true

and correct to the best of my knowledge, information and belief.


DEBORAH MORRISON,
Vice President of Risk Management and
  Quality Improvement,
Providence Hospital

3/30/2012
Date

# examPartners
*Your Partner for Quality Examinations*

Post Office Box 552 ☐ Monkton, Maryland ☐ 21111
ime@exam-partners.com
Phone. 443.632.6100 ☐ Fax. 410.357.8159

Friday, December 17, 2010

Sheila A. Alford
6805 Brown Wood Road
Upper Marlboro, MD 20772

Date of Injury:        4/02/10
Claim Number:        430370-0000

Dear Sheila Alford,

Please be advised that you have an Independent Medical Examination (IME) scheduled at the request of Sedgwick CMS to see Dr. John O'Donnell regarding your Workers' Compensation claim. The appointment information is noted as:

**<u>Monday-January 3, 2011 at 1:30PM</u>**
John O'Donnell, MD
Greater Chesapeake Orthopaedic Associates - Union Memorial Hospital
3333 North Calvert Street, Suite 400
Baltimore, MD  21218
410-554-2860
**Transportation will be provided by Transcend Services**

Please bring with you all x-rays and/or any previous diagnostic studies you have in your possession. This will prevent you from unnecessary or additional diagnostic testing. A photo identification and list of all current medications will be required, so please be sure to bring these items with you. <u>We ask that you arrive 15 minutes prior to your scheduled appointment to complete the necessary paperwork.</u>

This appointment is imperative that you attend, please make every effort to be available. Failure to attend could result in fees charged by the physician. These fees could be deducted from your future benefits. If you are unable to attend, please contact Melissa Icban at 800-285-3258 at least 72 hours prior to appointment. examPartners does not have the authority to change and/or reschedule this appointment.

Sincerely,
Robert Rumsey
**Direct: 443.632.6100**
examPartners

cc:    Sedgwick CMS c/o Melissa Icban
       P.O. Box 808
       Hunt Valley, MD 21030

       Benjamin Boscolo, Esq. - <u>SENT VIA REGULAR MAIL AND FAX</u>
       ChasenBoscolo
       7852 Walker Drive, Suite 300
       Greenbelt, MD  20770

Exhibit P

IN THE UNITED STATES DISTRICT COURT

FOR  THE DISTRICT OF COLUMBIA

Civil Division

- - - - - - - - - - - - x

SHEILA ALFORD,

       Plaintiff,

   v.                  Civil No. 11-2121 (RMC)

PROVIDENCE HOSPITAL,

       Defendant.

- - - - - - - - - - - - x

               Tuesday, July 17, 2012

               Washington, D.C.

Deposition of

        LaTOYA ABBOTT,

the 30(b)(6) witness, called for examination by

counsel for the plaintiff, pursuant to notice, held

at Providence Hospital, 1150 Varnum Street, N.W.,

Washington, D.C. 20017, beginning at 12:10 p.m.,

before Kelly Susnowitz, a Notary Public in and for

the District of Columbia, when were present on

behalf of the respective parties:

Exhibit Q

30(b)(6) DEPOSITION OF LaTOYA ABBOTT
CONDUCTED ON 7/17/2012                          77

1

2

3

4

5

6       Q.  Do you recall telling Ms. Alford, on

7   December the 16th, that she had to schedule an

8   appointment with yet another orthopedic surgeon,

9   Dr. John O'Donnell in Baltimore, Maryland?

10      A.  That would have came from Sedgwick.  That

11  wouldn't have come from me, because I don't know

12  who that is.

13      Q.  Did Sedgwick communicate with you in that

14  regard?

15      A.  Often, the associate may call and speak to

16  Sedgwick.  They have their number and they have

17  their case number and they call and discuss

18  multiple things I'm not privy to.

19

20

21

30(b)(6) DEPOSITION OF LaTOYA ABBOTT
CONDUCTED ON 7/17/2012                    72

1

2     Q.  Let me ask you this, you said that someone

3  at Sedgwick would have made this determination,

4  who would that have been at Sedgwick?

5     A.  Who was the person at the time?

6     Q.  Yes.

7     A.  Melissa Icban.

8     Q.  Is she a nurse practitioner?

9     A.  She is a case manager.

10

11

12

13

14

15

16

17

18

19

20

21

30(b)(6) DEPOSITION OF LaTOYA ABBOTT
CONDUCTED ON 7/17/2012                    81

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19     Q.   I note here it says, on January 7th, 2011,

20   there's an e-mail note from Melissa Icban, to

21   yourself and Donna, importance, high, please see

PRECISE REPORTING SERVICES (301) 210-5092  (877) 4 A STENO

30(b)(6) DEPOSITION OF LaTOYA ABBOTT
CONDUCTED ON 7/17/2012                         82

1    IME, from Dr. O'Donnell, the shoulder specialist,

2    who will receive an addendum next week regarding

3    question number three and there's a follow-up

4    e-mail apparently from Dr. O'Donnell to Melissa,

5    with the importance being high.  Do you recall

6    this e-mail?

7        A.  To be honest.  I recall -- may I look at

8    it?  I receive hundreds of e-mails a day.  I mean,

9    let me see that.

10       Q.  Who is Laura Renaud?

11       A.  She was the manager before me.

12       Q.  There's only two documents here.  Would

13   you take a moment to read that?

14       A.  Yep.

15       Q.  What's the date of the e-mail?  Who is it

16   from?

17       A.  Friday the 7th of January, at 3:50 p.m.

18       Q.  And who is that from?

19       A.  From Melissa Icban.

20       Q.  So Melissa sends that to you on Friday, at

21   3:50.

30(b)(6) DEPOSITION OF LaTOYA ABBOTT
CONDUCTED ON 7/17/2012                          83

1      A.   Uh-huh.

2      Q.   And that spells out Ms. Alford's condition

3    and prognosis; is that correct?

4      A.   It does.

5      Q.   It does not say that she cannot return to

6    work; is that correct?

7      A.   She talks about that the overall prognosis

8    is good and she suspects it will be another two

9    months before maximum medical improvement, reading

10   verbatimally, giving her limitations.

11     Q.   What does that mean in layperson's

12   language?

13     A.   Get back to her baseline.  Even though she

14   may have a baseline that would be seem abnormal to

15   you and I, due to her mobility, that she would be

16   able to get back to her baseline, her regular

17   baseline.

18     Q.   So Melissa sends that to you.  Do you have

19   any communication with Melissa on that day?

20     A.   No, because it's 3:50 and I can tell you

21   right now, I didn't look at this e-mail on Friday.

1    I do not look at e-mails after three o'clock.

2        Q.   So you didn't see that until Monday, the

3    10th of January?

4        A.   Maybe.

5        Q.   Or maybe Sunday, the 9th of January?

6        A.   No, I don't look at stuff -- when work is

7    over, work is over.

8        Q.   So you wouldn't have seen it -- you should

9    have seen it on Monday, the 10th of January?

10       A.   Uh-huh.

11       Q.   Did you contact Melissa after you read it?

12       A.   No.  I have no documentation of it and I

13   have no recollection, and nine times out of ten,

14   probably, no.  But I do see here where it says the

15   same thing that I said, in regards to driving, she

16   does feel she can drive today; however, she does

17   not feel that she can lift her wheelchair in and

18   out of her car.  Thank you, I'm not crazy.

19       Q.   Well, she couldn't lift the wheelchair out

20   of her car but, at that point in time, does she

21   have to in order to come to work?

30(b)(6) DEPOSITION OF LaTOYA ABBOTT
CONDUCTED ON 7/17/2012                    85

1      A.   Does she have to in order to come to work?

2      Q.   Correct.

3      A.   From the whole idea and the premise I

4    dealt with her, it was her driving factor.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

* * *

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

SHEILA ALFORD,            )

   Plaintiff,            )    CIVIL ACTION NO.:

v.                        )    11-2121-(RMC)

PROVIDENCE HOSPITAL,   )

   Defendant.            )


Deposition of

        TERRIE TRIMMER,

Individually and as Corporate Representative of
Providence Hospital, taken on Friday, October 26,
2012 at 12:21 p.m., at the offices of Providence
Hospital, 1150 Varnum Street, N.E., Employee
Relations, Washington, D.C., before E. Marsellas
Coates, Notary Public.

Exhibit S

DEPOSITION OF TERRIE TRIMMER
CONDUCTED ON 10/26/2012                      28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    Q.  Did anybody ever tell you that during

19  that December or January period, that Ms. Alford

20  wanted to return to work -- let me strike the

21  question.

DEPOSITION OF TERRIE TRIMMER
CONDUCTED ON 10/26/2012                    29

1        Did anyone tell you that she was pre --

2   she was told that she could not come to work?

3       A.  I don't remember specifically.  I don't

4   remember specifically.

5       Q.  Did anyone tell you that Ms. Alford

6   wanted to return to work?

7       A.  Not that -- not that I can recall.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

* * *

30(b)(6) DEPOSITION OF YOMI FABIYI
CONDUCTED ON 7/31/2012

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

SHEILA ALFORD,            )

   Plaintiff,          ) CIVIL ACTION NO:

v.                        ) 11-2121-(RMC)

PROVIDENCE HOSPITAL,  )

   Defendant.          )

            ----------------------

      Deposition of YOMI FABIYI, Individually

and as Corporate Representative of Providence

Hospital, taken on Tuesday, July 31, 2012 at 9:50

a.m., at the offices of Providence Hospital, 1150

Varnum Street, N.E., Employee Relations,

Washington, D.C., before E. Marsellas Coates,

Notary Public.

           --------------------

Reported by:

E. Marsellas Coates

* * *

41

14    Q.   Okay.   In your letter, you state, in the

15    third paragraph, first sentence, as follows: "We

16    regret that your illness or condition has

17    prevented you from returning to work at

18    Providence, and we send our best wishes that you

19    would recover and be able to work soon."

20         Second sentence, "Should you become able

21    to work, please feel free to submit an application

42

1    for any posted or advertised position that you're

2    qualified."

3              Okay.  Let me stop --

4        A.  Okay.

5        Q.  -- start here, the first sentence.

6              "We regard that your illness or condition

7    has prevented you from returning to work at

8    Providence."  Did you know at that particular

9    point in time, on January 25th, there was no

10   medical document, whatsoever, that prevented

11   Ms. Alford from returning to work?

12             MR. GUNDERSON:  Objection, foundation.

13       A.  No, I didn't.  But --

14       Q.  Did you know that she had been cleared,

15   in an IME, as of December the 2nd, to return to

16   work?

17             MR. TEMPLE:  Excuse me, you answered that

18   question.

19       Q.  Did you know that the medical emergency

20   doctor said that she could return to work on

21   December the 6th?

PRECISE REPORTING SERVICES (301) 210-5092 (877) 4 A STENO

30(b)(6) DEPOSITION OF YOMI FABIYI
CONDUCTED ON 7/31/2012

43

1     A.  I was informed about that, yes.

2     Q.  Did you know that there was an IM -- she

3  was referenced by Ms. Abbott to yet another IME, a

4  Dr. Connolly, I believe his name was, who also

5  cleared her to return to work?

6     A.  I -- that one I don't remember.  I just

7  know that she was cleared to come back to work,

8  based on information I got.

9     Q.  Do you understand that she had no illness

10  as of January 25th --

11     A.  Right.

12     Q.  -- that prevented her from returning to

13  work?

14     A.  Right.

15        MR. GUNDERSON:  Objection.

16     Q.  Your answer, I'm sorry, you said "right,"

17  does that mean yes?

18     A.  Illness?  I knew.

19     Q.  Yes.

20     A.  Well, again, based on our conversation --

21     Q.  Illness or condition, that prevented her

44

1    from returning to work?

2        A.  Well, we're aware that she had a

3    condition of not being able to lift her wheelchair

4    to come to work.  Now --

5        Q.  So I want to make sure we're clear,

6    though.

7        A.  Okay.

8        Q.  My questions are not about the

9    wheelchair.

10       A.  Okay.

11       Q.  My question to you is that, she did not

12   have an illness or condition that prevented her

13   from returning to work as of January 25th, 2011?

14       A.  Right.  We know she was cleared to come

15   back to work.

16       Q.  So this sentence is not correct?

17       A.  Right.

18       Q.  Okay.

19       A.  Like I said, it's a generic letter we

20   normally send to --

21       Q.  That's not my question.

45

1      A.  Okay.

2      Q.  The question is that the sentence is not

3   correct?

4      A.  If you want to be technical about it.

5      Q.  I am being technical about it.

6      A.  Okay.  The condition doesn't necessarily

7   refer to anything that's medical.  It could be a

8   condition preventing you to come back to work,

9   regardless of what it is.

10      Q.  So let me understand what you're saying.

11      A.  Okay.

12      Q.  A condition, when you say here, an

13   illness or a condition, you're saying the

14   condition is not medically related; is that

15   correct?

16      A.  When I say "condition," what I'm

17   specifically saying is, it's not like we're saying

18   the physician has said, or you have an illness, as

19   a result you can't come back to work.

20          We knew that the reason why she couldn't

21   come back to work was because, she didn't have the

46

1    means to come back to work based on the fact that

2    she couldn't lift her wheelchair into the car and

3    get to work.

4           So even though we used that generic --

5    well, it's a generic letter we use.  Maybe we

6    could have personalized it.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

* * *    30(b)(6) DEPOSITION OF YOMI FABIYI
CONDUCTED ON 7/31/2012

91

1

2

3

4

5

6

7

8

9

10

11

12

13    Q.  Now, if Ms. Alford doesn't come to work

14    because she's told not to come to work, and to

15    report for repeated IMEs, between 12/6 and 1 --

16    January 7th, okay, is it your policy that she

17    could be terminated for not coming to work during

18    that time?

19    A.  We won't terminate based on that.

20    Q.  Well --

21    A.  If we're the ones telling you not to come

30(b)(6) DEPOSITION OF YOMI FABIYI
CONDUCTED ON 7/31/2012

92

1    to work, because we need you to get cleared

2    somewhere else or whatever, no, we're going to

3    have to wait until, you know, we get the results

4    back and, you know, the go-ahead from either

5    occupational health as far as this person is not

6    cleared because of this reason or, yes, this

7    person has been cleared and what have you.

8          But, no, we don't terminate just because

9    occupational health is telling you not to come to

10   work and go see an IM or whatever.  No.

11

12

13

14

15

16

17

18

19

20

21

* * *